Filed 10/22/21  In re B.B. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr>
<td>In re B.B., a Person Coming Under the Juvenile Court Law.</td>
<td></td>
</tr>
<tr>
<td>HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>        Defendant and Appellant.</td>
<td>A162025<br><br>(Humboldt County<br>Super. Ct. No. JV190126)</td>
</tr>
</table>

A.C. (mother) appeals from a Welfare and Institutions Code[1] section 366.26 order terminating her parental rights.  Mother's sole contention on appeal is that the Humboldt Department of Health & Human Services (Department) and juvenile court failed to comply with the inquiry provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).  We conditionally reverse the order as to B.B. (minor) and remand the matter to allow the Department and court to take all necessary corrective actions.

---

[1] All statutory references are to the Welfare and Institutions Code.

In July 2019, the Department filed a section 300 petition alleging minor B.B. and her half sibling G.C.[3] had suffered or were at substantial risk of suffering serious physical harm and/or illness (§ 300, subd. (a)) and failure to protect (§ 300, subd. (b)) due to domestic violence between mother and father and to mother's "unresolved substance abuse and mental health issues." Attached to the petition was California Judicial Council form ICWA-010A. A box was checked indicating an "Indian child inquiry" had not been made.

In its detention report, the Department noted it was unsure whether ICWA applied and that parents needed to "fill out an[ ] ICWA 020 and do further inquiry." The Department requested an absent parent search for father, as his whereabouts were unknown. At the detention hearing, the court ordered parents to complete an ICWA-020 form.[4]

In its jurisdiction report, the Department again noted it was unsure whether ICWA applied. The parents had not given "any information of possible Native Ancestry for the children," but the Department would do "further inquiry with the family." At the jurisdiction hearing, the court made no ICWA finding and set the matter for a disposition hearing.[5]

---

[2] We summarize only those facts relevant to the issue on appeal.

[3] G.C. has a different father than minor and is not a party to this appeal.

[4] The court ruled that a prima facie showing had been made that minors were children described by section 300, and ordered reunification services and visitation for parents and set the matter for a jurisdiction hearing.

[5] The court sustained the section 300 petition, finding by a preponderance of the evidence that detention was proper under subdivisions (a) and (b).

2

In its disposition report, the Department requested the court make a finding that ICWA did not apply. Mother identified as White and reported "she knew of no Native American ancestry." Father identified as Black and had "not said that he has any Native American ancestry."

At the disposition hearing,[6] the court elevated father to presumed father status. Father indicated he may have "Inuit ancestry" through his mother (paternal grandmother). Father stated he did not know if paternal grandmother was enrolled in any tribe, and that he "didn't get to know her much" but provided the court with paternal grandmother's full name. The court then asked, "But as far as you know, you're not enrolled in any Tribe? 'No'? Shaking his head 'no.' All right." The court continued the disposition hearing and directed father to complete an ICWA-020 form. On the ICWA-020 form, father checked the box indicating he "may have Indian ancestry" and stated "Inuit." The form contains no other information regarding father's ancestry.

In an addendum to its disposition report prepared for the continued hearing, the Department stated father reported paternal grandmother, who was deceased, had "Eskimo Indian ancestry, but [father] was unsure if he or the paternal grandmother were ever enrolled in a tribe." The Department was "sending out ICWA 030 [notices] to all Eskimo tribes to determine if father and [minor] are eligible or enrolled members of any Eskimo Indian tribe." At the uncontested hearing, the court found ICWA did not apply and set the matter for a six-month review hearing.[7]

---

[6] We grant the Department's request for judicial notice of the September 19, 2019 reporter's transcript and the "Department's Delivered Service Log." (Evid. Code, §§ 452, 453, 459.)

[7] The court also ordered no reunification services to father who had been elevated to "presumed father" and who was in custody.

In its six-month status review report, the Department noted ICWA did not apply. At the six-month review hearing, the court ordered minors to remain dependents of the court and set the matter for a 12-month review hearing. It made no further ICWA determinations.

In its 12-month status review report, the Department continued to state ICWA did not apply. The Department had "not had any contact from [father]," and he had "not engaged in any services to make changes in his life." After his initial appearance, father had refused to appear at any subsequent hearing. At the 12-month review hearing, the court terminated services and set a section 366.26 hearing.

Before the section 366.26 hearing, and a year after it had found ICWA did not apply, the court held a hearing specifically to address the application of ICWA. It had come to the court's attention that ICWA "may not have been adequately addressed" because "in hindsight, the Court should have required the information obtained from the ICWA-030 forms be included" in the Department's report. The court therefore ordered the Department to prepare a new report that included, "in detail, their efforts in this matter."

In its addendum report, the Department recited that father had reported at the jurisdiction hearing that paternal grandmother had "native ancestry with the Inuit/Eskimo Tribe in Alaska" but was unable to provide any other information. Father had subsequently passed away in November 2020. The year prior to his death, in October 2019, the Department had sent ICWA-030 notices "to all Eskimo tribes to determine if father and [minor] are eligible or enrolled members" but received no responses. None of these notices were included in the record. The social worker had also contacted five tribes and those tribal databases had no enrolled members with paternal

4

grandmother's last name and no other "Inupiaq Eskimo Tribes" had responded.

At the ICWA hearing, county counsel, joined by minor's counsel, requested that the court find ICWA did not apply. Father's counsel had no information to add. He explained father had appeared at the initial hearing but "declined to be transported for all future appearances," and counsel had had "limited contact" with father before he died. Mother's counsel, in turn, had no "direction" from mother as to whether she agreed or disagreed with the Department's ICWA determination, and counsel submitted on the matter. The court found the Department "made every effort" to obtain information from father before he passed away and ruled ICWA did not apply.

In the meantime, however, the Department had served ICWA-030 notices informing 122 tribes, the Bureau of Indian Affairs, and the Secretary of the Interior of the section 366.26 hearing. The notices contained father's information and the available information of paternal grandparents. These notices were not mentioned in the addendum report that had been prepared for the ICWA hearing, nor were they filed with the court until three weeks after that hearing.

In its section 366.26 report, the Department recommended termination of mother's parental rights and at the section 366.26 hearing the court ordered adoption as the permanent plan. The court terminated mother's parental rights, stated minor and G.C. were not Indian children, and set the matter for a postpermanency planning hearing.

## DISCUSSION

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established

5

minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes. [Citations.] In 2006, California adopted various procedural and substantive provisions of ICWA. [Citation.] In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2109 [citation], and govern here." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)

"The new statute specifies the steps the Agency and the juvenile court are required to take in determining a child's possible status as an Indian child. An 'Indian child is defined in the same manner as under federal law, i.e., as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe . . . .' (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].) The Agency and the juvenile court have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1048.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry

6

as soon as practicable.' (*Id.*, subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)

"The juvenile court may . . . make a finding that ICWA does *not* apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered.  (§ 224.2, subds. (i)(2), (g).)  Even if the court makes this finding, the Agency and the court have a continuing duty under ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.'  (§ 224.2, subd. (i)(2).)" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence.  [Citations.]  But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

 Before we turn to mother's contention that the Department failed to comply with the second duty—the duty of further inquiry under section 224.2, subdivision (e)—as to father's Indian ancestry, we first address the Department's contention that it had no duty to conduct a further inquiry "based on father's limited . . . disclosures."

As we have recited, father filled out an ICWA-020 form indicating he "may have Indian ancestry."  He then listed "Inuit."  The rest of the form is devoid of any information.  Father subsequently reported paternal grandmother "has Eskimo Indian ancestry, but was unsure if he or the paternal grandmother were ever enrolled in a tribe."

7

The Department, relying on *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*), claims this was not enough information to require "further inquiry." Mother, relying on *In re T.G.* (2020) 58 Cal.App.5th 275 (*T.G.*), claims it was.

In *Austin J.*, the mother informed the juvenile court her " 'mother had Cherokee,' and said her 'family in Little Rock, Arkansas' would have more information." (*Austin J., supra*, 47 Cal.App.5th at p. 878.) When filling out the ICWA-020 form, the mother left blank the box indicating whether she was or may be eligible for membership in a tribe but stated "the child 'may have Indian ancestry'; namely, Cherokee, through her grandmother, who is deceased." (*Ibid.*) When the mother spoke with the social worker, she explained she " 'may have [a] connection to the Cherokee tribe or other tribes as well as having Creole heritage,' " but that she " 'did not know if she was registered with any tribe,' " and the "possible Cherokee heritage was on her mother's side of the family through her maternal grandmother and maternal grandfather," and that her maternal aunt "might have additional information." (*Ibid.*) The maternal aunt, in turn, said the maternal grandmother " 'may have had Cherokee heritage,' " the maternal grandfather " 'possibly had heritage but that she did not know what tribe,' " and she was unaware if anyone in the family attended an Indian school, lived on a reservation or had been treated in an Indian clinic. (*Ibid.*) The juvenile court found ICWA did not apply. (*Id.* at p. 887.)

On appeal, the mother contended the Department "was required to provide notice to Cherokee tribes because social workers and the court had 'reason to know an Indian child [was] involved.' " (*Austin J., supra*, 47 Cal.App.5th at p. 886.) The Court of Appeal disagreed. The court held the mother's statements "that she 'may have Indian ancestry' and had been 'told

8

that [her] mother had Cherokee [ancestry],' and the similar statement by Mother's aunt that she 'may have had Cherokee heritage,' are insufficient to support a reason to believe the children are Indian children as defined in ICWA. At most, they suggest a mere possibility of Indian ancestry." (*Id.* at p. 888.) "Even if we assume," said the court, "that the possibility of Indian ancestry may suggest the possibility of Indian tribal membership, that bare suggestion is insufficient by itself to establish a reason to believe a child is an Indian child. In the recent changes to California's ICWA-related law, the Legislature removed the language, 'information suggesting the child is a member of a tribe or eligible for membership in a tribe,' from the list of circumstances that provided one with a 'reason to know' a child is an Indian child. Significantly, it did not add that language to a definition of the newly created 'reason to believe' standard for inquiry. We will not infer its incorporation into that standard. [¶] In short, the fact disclosed through the social worker's initial inquiry regarding the possibility that the children are Indian children—that Mother may have Cherokee ancestry—is insufficient by itself to provide a reason to believe that either the children or their parents are members of, or eligible for membership in, an Indian tribe. Therefore, the statute imposed no duty to make further inquiry." (*Id.* at p. 889.)

In *T.G.*, the mother reported the maternal grandfather "had Indian ancestry, 'but no connection to a tribe." In filling out an ICWA-020 form, the mother indicated she " 'may have Indian ancestry' " and indicated "Cherokee as the name of the band or tribe." She "additionally indicated possible Indian ancestry [through her] paternal side through her great-grandfather." (*T.G.*, *supra,* 58 Cal.App.5th at p. 283.) At the detention hearing, the maternal grandmother confirmed "she had American Indian ancestry on her side of the

9

family" through the Cherokee tribe, although she did not know through which ancestor, she claimed Cherokee heritage. (*Id.* at pp. 283–284.) The juvenile court ordered the Los Angeles County Department of Children and Family Services (department) to send notices to the Department of the Interior, the Bureau of Indian Affairs, and the Cherokee Nation. (*Id.* at p. 285.) However, "no ICWA notice of any sort was ever sent" in the proceedings. (*Id.* at p. 286.) Later, and with no explanation, the department's status review report stated ICWA does not apply. "That same statement was thereafter repeated in all subsequent reports, including the report for the section 366.26 selection and implementation hearings . . . . None of the court's subsequent orders includes ICWA findings." (*Id.* at pp. 286– 287.)

On appeal, the mother contended the juvenile court and the department failed to comply "with their duties of inquiry and notice" under ICWA. (*T.G., supra,* 58 Cal.App.5th at p. 280.) The Court of Appeal agreed, holding the department "failed to adequately investigate [the mother's] claim of Indian ancestry and the juvenile court failed to ensure an appropriate inquiry had been conducted before concluding, if it ever actually did, ICWA did not apply." (*Ibid.*) The court stated the mother and maternal grandmother's preliminary responses "unquestionably provided reason to believe Indian children might be involved in these proceedings." (*Id.* at p. 292.) And while the juvenile court "fulfilled its initial obligation to ask about [the mother's] possible Indian ancestry[,] it failed . . . to ensure the [d]epartment complied with its duty of further inquiry based on the responses the court received from [the mother] and [the maternal grandmother]." (*Id.* at p. 293.)

In conditionally reversing the juvenile court orders, the court disagreed with the *Austin J.* court's "narrow reading of the nature and quality of information sufficient to trigger the duty of further inquiry." (*T.G.*, *supra*, 58 Cal.App.5th at p. 294.)  The court stated that although "an 'Indian child' is defined in terms of tribal membership, not ancestry," "the question of membership is determined by the tribes, not the courts or child protective agencies." (*Ibid.*)[8]  On remand, the court ordered the juvenile court to direct the department to "make a meaningful and thorough inquiry regarding [the minors'] possible Indian ancestry, including interviews with extended family members and other persons who may reasonably be expected to have information regarding the children's tribal membership and contact with any tribes that may have such information." (*Id.* at p. 297.)

Significantly, *Austin J.* predated an amendment to section 224.2 defining "reason to believe."  As the appellate court in *In re S.R.* (2021) 64 Cal.App.5th 303 stated, the amendment "confirms the 'reason to believe' standard requiring further inquiry should be broadly interpreted." (*Id.* at p. 317.)

We therefore conclude *T.G.*, rather than *Austin J.*, reflects the proper approach and further conclude the Department's duty of further inquiry was triggered by father's statements concerning his ancestry.

We therefore turn to whether the Department adequately discharged its duty of inquiry.

"When [the 'reason to believe'] threshold is reached, the requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family

---

[8] The court also disagreed with the *Austin J.* court's holding "that amendments enacted by Assembly Bill No. 3176 (2017–2018 Reg. Sess.) . . . were intended to limit the [d]epartment's robust duty of inquiry." (*T.G., supra*, 58 Cal.App.5th at pp. 280–281.)

11

members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' " (*Austin J.*, *supra,* 47 Cal.App.5th at p. 883.)

The following can be determined on the record before us: First, in its addendum report for the ICWA hearing, the Department stated that on October 1, 2019 it sent out ICWA-030 notices to "all Eskimo tribes to determine if the father and [minor] are eligible or enrolled members of any Eskimo Indian Tribe" and it received no responses. Second, the social worker contacted five tribes, and none had "enrolled members" with paternal grandmother's name. Third, a week before filing the addendum report, the Department sent ICWA-030 notices to 122 Native Alaskan tribes, as well as to the Bureau of Indian Affairs Pacific Region Regional Office and the Secretary of the Interior. However, the Department did not discuss these notices in its addendum report. Nor did it file these notices until December 29, which while prior to the January 27, 2021 section 366.26 hearing, was three weeks after the December 8, 2020 ICWA hearing. Therefore, no information about the December 2020 ICWA-030 notices was before the court when it made its ICWA determination, although the notices were in the file and available to the court at the section 366.26 hearing.

On appeal, mother contends these efforts did not satisfy the Department's burden under section 224.2, subdivision (e).

First, she asserts that since the October 2019 notices were never filed with the juvenile court, the Department "never provided the juvenile court with the information it shared with the tribes." Initially, we observe "there is no express directive to the social services agency to provide a record of the

12

efforts it undertook to comply with ICWA, either in the applicable statutes or rules of court," however, "a social services agency has the obligation to make a meaningful effort" to fulfill its duty of further inquiry. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) With that being said, while it is unclear what information was conveyed to the tribes in the initial notices, it is clear that the social worker gave the five tribes she contacted by telephone paternal grandmother's name and no one by that name was enrolled in those tribes. Further, it is clear from the record what information was contained in the subsequent December 2020 notices. Those notices contained father's information, including his dates of birth and death and known addresses, minor's information, and paternal grandparents' information, including grandmother's date of birth, and last address.

Mother takes no issue with the accuracy of the information contained in the December 2020 notices but rather complains they were "never considered by the juvenile court or discussed at the section 366.26 hearing." She further complains that even though the social worker personally contacted five recognized tribes in October 2019, that left 224 of the 229 federally recognized Alaskan tribes unnoticed,[9] and even though the Department in December 2020 sent notices to 122 of these tribes, some were duplicate notices and 73 had incorrect addresses because of address changes implemented in 2020. In short, mother maintains all 229 federally recognized tribes in Alaska should have been contacted.

---

[9] We take judicial notice of the relevant pages of the Federal Register, Notices, 85 Federal Register 24005 et seq. (Apr. 30, 2020). (Evid. Code, §§ 452, 459.) There are 229 federally recognized Alaskan tribes (or native villages). (Notices, 85 Fed.Reg. 24005–24013 (Apr. 30, 2020); <www.bia.gov/regional-offices/alaska/tribes-served> [as of Oct. 22, 2021].)

Although father identified Eskimo or Inuit heritage through paternal grandmother, he had no information on any specific tribe. There is, however, no federally recognized "Inuit" or "Eskimo" tribe. Rather, the term "Eskimo," as it pertains to Alaskan indigenous or aboriginal peoples has been replaced by the term "Inuit." The term "Inuit" is a collective term (the plural of Inuk) for a group of "culturally similar indigenous peoples inhabiting the Artic regions of Alaska, Greenland, Canada, and Siberia." (<www.newworldencyclopedia.org/entry/Inuit> [as of Oct. 22, 2021].) The Alaskan Inuit comprises, among others, the Alutiiq, Yup'ik (or Yupiat), and Inupiat tribes. (Degnan, *Education: A Lifeline for the Inuit in Transition* (1997) 10 St. Thomas L.Rev. 109.)

The Department maintains that through its further inquiry efforts it obtained "names, birthdates, and dates of death for the paternal grandparents—information that was . . . not provided to the Department from either mother or father" and also "narrow[ed] father's Inuit ancestry to the Inupiaq and Yupik Tribes." In light of this information, the Department sent the December 2020 ICWA-030 notices to the "122 Inupiaq and/or Yupiat Tribes and not all 229 federally-recognized tribes in Alaska."

While it appears imminently reasonable for the Department to have narrowed the list of tribes that should have been noticed, that winnowing process is not included in the record on appeal. The Department cites to its addendum report, which does not state that the department "narrow[ed]" father's ancestry to certain tribes. Nor does it explain how and why the Department did so. Indeed, the report does not even mention that the Department noticed "Inupiaq and/or Yupiat Tribes," let alone discuss how the Department narrowed its focus to only those tribes. "In the absence of an appellate record affirmatively showing the court's and the agency's efforts to

14

comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

The Department asserts it was "not required to definitively ascertain or refute father's claim of Inuit ancestry" and that requiring the Department to "contact the [Bureau of Indian Affairs], the State Department of Social Services, and all 229 federally recognized tribes in Alaska—where the child's deceased father is not an enrolled member of any identifiable tribe and where the father has provided only vague information regarding his Inuit ancestry—is not supported by existing case law defining the ICWA inquiry duties of child protection agencies." (Fn. omitted.)

While it is true the Department is not required to " 'cast about' for investigative leads" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323), statutory and case law require that an agency contact the Bureau of Indian Affairs and the State Department of Social Services when there is reason to believe such ancestry. (§ 224.2, subd. (e)(2); *D.S., supra,* 46 Cal.App.5th at p. 1049 ["required further inquiry includes . . . contacting the Bureau of Indian Affairs and State Department of Social Services" (fn. omitted)].) The requirement that the agency contact the Bureau of Indian Affairs and the State Department of Social Services is "for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2)(B).) Therefore, as it claims to have concluded, the Department may not need to contact all 229 federally recognized Alaskan tribes. (See *In re M.W.* (2020)

15

49 Cal.App.5th 1034, 1045 ["With that limited information . . . the Department contacted the [California Department of Social Services] and the [Bureau of Indian Affairs] to obtain assistance in identifying the designated tribal agents for all federally recognized Navajo, Apache, and Cherokee tribes."].) Further, although the Department sent an ICWA-030 notice to the Bureau of Indian Affairs, it sent that notice to the Pacific Region Regional Office (which consists of California tribes) and not the Alaska Region Regional Office (which consists of Alaskan native villages and tribes). (See <www.bia.gov/regional-offices> [as of Oct. 22, 2021].)

The Department also asserts father "was not an enrolled member of any tribe and [minor] does not meet the definition of an Indian child under ICWA." Although the court minutes indicate father stated he was "not enrolled in any tribe," the transcript of the hearing indicates father was unsure whether he was enrolled in a tribe. He shook his head, indicating "No," when asked, "as far as you know, you're not enrolled in any Tribe?" This response does not mean that father was not enrolled, rather it merely reflects ignorance on the matter. Additionally, the Department's October 2019 report states father was "unsure if he or the paternal grandmother were ever enrolled in a tribe." In any event, while "an 'Indian child' is defined in terms of tribal membership, not ancestry," "the question of membership is determined by the tribes, not the courts or child protective agencies. (See *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65–66, fn. 21 [Indian tribe is final arbiter of its membership rights]; § 224.2, subd. (h) ['A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive. Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's membership status unless the tribe also

16

confirms in writing that enrollment is a prerequisite for membership under tribal law or custom'].)"  (*T.G.*, *supra*, 58 Cal.App.5th at p. 294.)

Finally, we cannot say any error was harmless as the Department urges.  The Department asserts mother "cannot demonstrate that there are any viable leads available to the Department or the juvenile court that would result in a 'reason to know' that [minor] is an Indian child for noticing purposes, or any evidence that could actually result in a credible determination that [minor] is an Indian child."  However, we cannot say that the assistance provided by the Bureau of Indian Affairs or State Department of Social Services would not have pointed to more accurate tribal information.  Further, the Department does not refute mother's claim that 73 of the 122 ICWA-030 notices were sent to incorrect addresses.  Even assuming the Department correctly identified the 122 tribes entitled to notice, more than half of these notices may never have arrived at their intended destination, and there are no return receipts or responses in the record to confirm the tribes received any of the notices.  "Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry."  (*T.G., supra,* 58 Cal.App.5th at p. 295.)[10]

---

[10] The Department also contends the doctrine of invited error should apply due to mother's "decision to disengage from the dependency, refusal to participate or attend hearings, and failure to timely notify the Department of any issues she may have had with the sufficiency of inquiry into father's alleged Inuit ancestry effectively amounts to litigation gamesmanship that should not be rewarded by this court, especially because it unnecessarily results in [minor's] prolonged uncertainty in a dependency limbo."  While certainly frustrating, mother's refusal to participate in the proceedings cannot relieve the Department of its duty to comply with ICWA or a juvenile court's duty to ensure such compliance.  (See *In re B.R.* (2009)

**DISPOSITION**

The section 366.26 order as to B.B. is conditionally reversed.  The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.

---

176 Cal.App.4th 773, 779 [" 'it would be contrary to the terms of the [ICWA] to conclude . . . that parental inaction could excuse the failure of the juvenile court [and the Department] to ensure' " compliance with ICWA].)

BANKE, J.

WE CONCUR:

HUMES, P. J.

SANCHEZ, J.

A162025
*In re B.B.*

19